United States Court of Appeals
Fifth Circuit

**F I L E D**

September 9, 2004

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 03-10949

SCOTTSDALE INSURANCE COMPANY,

Plaintiff-Counter Defendant-Appellant,

VERSUS

KRISTY WILLIAMS; ET AL.,

Defendants,

DAVANSHA SESSIONS,

Defendant-Counter Claimant-Appellee.

Appeal from the United States District Court
For the Northern District of Texas
4:02:CV-316

Before JOLLY, DAVIS and JONES, Circuit Judges.

PER CURIAM:[*]

We affirm the judgment of the district court essentially for reasons stated in the district court's thorough memorandum opinions and orders of July 22, 2003 and August 22, 2003.

AFFIRMED.

---

[*]Pursuant to 5ᵀᴴ CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5ᵀᴴ CIR. R. 47.5.4.

EDITH H. JONES, Circuit Judge, dissenting:

With due respect to the able district judge and my colleagues, and realizing that the issue of Texas law I am about to address is close, I dissent.

The majority has bound Scottsdale to judgment in a case concerning an injury inflicted by its insured a month after Scottsdale terminated insurance coverage, and which judgment was rendered by default four years post-injury and four more years before the plaintiff sued Scottsdale to recover. I do not accept Scottsdale's arguments based on the statute of limitations (since a minor was involved) or on the presumption of mailing its termination notice to the Texas Board of Private Investigators and Private Security Agencies ("Texas Board" or "Board"). However, the facts here show no bad faith or even error by Scottsdale when it refused to defend its insured after it terminated coverage for nonpayment of premiums. Since so much time elapsed before Scottsdale was sued on the judgment, neither the company, its agent, nor the Texas Board maintained records to verify the formal notification to the Board. Consequently, Scottsdale was deprived, by the drawn-out nature of events, of the ability to preserve its termination defense.

In a recent case, the Texas Supreme Court reiterated that, "'[i]n no event . . . is a judgment for plaintiff against defendant, rendered without a fully adversarial trial, binding on

2

defendant's insurer or admissible as evidence of damages in an action against defendant's insurer by plaintiff as defendant's assignee.'" Trinity Univ. Ins. Co v. Cowan, 945 S.W.2d 819, 822 (1996) (quoting State Farm Fire v. Gandy, 925 S.W.2d 696, 714 (l996). If applied to this case, Trinity means that Scottsdale is entitled to receive a new trial on the damages suffered by the plaintiff. I believe Trinity is controlling, even though the aforementioned quotation is prefaced by a statement that the state Supreme Court "do[es] not reach Trinity's challenge to the amount of damages . . . except to note that it is controlled by our recent decision in [Gandy] . . . . (Tex. 1996) (emphasis added). The statement of the law is unequivocal, and the facts in Trinity are virtually on point with those here — — default judgment rendered against an insured after the insurer, notified of the claim, sends notice and refuses to defend. In Trinity, there is no evidence of collusion between the insured and the victim, and the fact that the victim took an assignment of the insured's rights against Trinity makes no legal difference. The district court erred, I believe, in limiting Trinity, and its predecessor Gandy, to cases in which there is collusion between the insured and the victim.

Nonetheless, I concede that some Texas cases have held that when an insurer wrongfully breaches its insurance contract by refusing to defend, it waives the protection of policy provisions that bind it to a judgment against the insured only if there was an "actual trial." See e.g., Struna v. Concord Ins. Services, Inc.,

3

11 S.W.3d 355, 359 (Tex. Civ. App. -- Hou. [1st Dist.] 2000); <u>Gulf Ins. Co. v. Parker Prods. Inc.</u>, 498 S.W.2d 676, 679 (Tex. 1973); <u>First Nat'l Indem. Co. v. Mercado</u>, 511 S.W.2d 354, 358 (Tex. Civ. App. -- Austin 1974, no writ); <u>Pioneer Cas. Co. v. Jefferson</u>, 456 S.W.2d 410, 413 (Tex. Civ. App. -- Houston [14th Dist.] 1970, writ ref'd n.r.e.); <u>Gulf Ins. Co. v. Vela</u>, 361 S.W.2d 904, 908 (Tex. Civ. App. -- Austin 1962, writ ref'd n.r.e.). However, these cases are distinguishable for two reasons. First, none of these cases involves: a bona fide attempt at termination for non-payment of premiums and a covered "occurrence" a month after termination; or a total lapse of ten years, during which the evidence critical to the company's proving it supplied notice to the state Board was discarded pursuant to perfectly normal document retention policies. None, in short, suggests that a waiver must follow from circumstances beyond the control and foreseeability of the insurance company. Second, there is no evidence of "wrongful" policy termination by the company, only of ineffective termination and the company's failure to prove that the presumption of mailing applies to it. Based upon the unusual circumstances here, the waiver cases do not seem as compelling as <u>Trinity</u>.

In a normal failure to defend situation, the company would have been permitted to prove that it, indeed, sent prompt notice of cancellation to the Board in one of two ways: (1) the insured, having received an adverse judgment only two years after the occurrence, could have sued, or assigned its suit to the

4

victim; or (2) the victim could have sued immediately after receiving the judgment.  The company would then have been able to contest, in a timely fashion, not only the judgment, but also the fact of coverage.  For in such cases, "it is widely held that the insurer may raise against the claimant any defense which would have been available against the insured."  7 COUCH ON INS. § 106:5 (citing American Indem. Co. v. Solomon, 231 F.2d 853 (5th Cir. 1956).

A 50-year old Texas case, cited by neither the district court nor the parties, holds that this usual rule did not apply when a local ordinance required insurance to be issued to taxicab companies that would inure to the benefit of the victims. Pan-American Ins. v. Basso, 252 S.W.2d 505, 507 (Tex. Civ. App.-- El Paso 1952, writ ref'd).  However, Basso, has recently been distinguished because of the municipal ordinance by another Texas court.  See Jun v. Lloyds and Other Various Insurers, 37 S.W.3d 59, 63 (Tex. App. -- Austin, 2000).  Moreover, there was no question of policy termination in Basso, unlike in this case, but only of the insured's failure to comply with the policy's notice and cooperation provisions.  Basso does not trump the usual rule enabling the insurance company to raise the defenses it would have had against the insured.

Scottsdale has been foreclosed from interposing the defense that the policy terminated before the injury here was inflicted.  I regret that a "gotcha"-type exercise of (erroneous) logic now also forecloses the company from compelling the plaintiff

to submit to an adversarial trial on the damages.  I respectfully

dissent.