Reversed and Rendered and Majority and Dissenting Opinions filed June 7,
2007








Reversed and Rendered and Majority and Dissenting Opinions filed June 7,
2007.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-05-00851-CV

_______________

 

YASUDA FIRE AND MARINE INSURANCE COMPANY OF AMERICA
AND SOMPO JAPAN INSURANCE CO. OF AMERICA, Appellants

 

V.

 

MILLER CRIACO D/B/A CRIACO & CORTEGUERA, Appellee

                                                                                                                                               


On Appeal from 405th District Court

Galveston County, Texas

Trial Court Cause No. 04CV0847

                                                                                                                                                

 

                                     M
A J O R I T Y   O P I N I O N








Appellee is a law firm that
represented a personal-injury claimant who sought to recover damages sustained
in a two-car collision.  After recovering on a claim against the driver of the
other car, the law firm=s client filed suit against an insurance company that
provided underinsured-motorist coverage in favor of the client.  To settle that
case, the client and the insurance company first entered into a letter
agreement under Texas Rule of Civil Procedure 11, followed by a settlement
agreement and release.  After the insurance company paid a large settlement to
the law firm and its client, the law firm filed this suit against the insurance
company asserting that the Rule 11 letter required the insurance company to pay
the workers= compensation lien to a nonparty insurance adjuster and that the law firm
was entitled to receive one-third of this amount as attorney=s fees for its recovery of the
workers= compensation lien.  The trial court
granted the law firm=s motion for final summary judgment and denied the insurance
company=s cross-motion for summary judgment.

On appeal, the panel is divided on
the issue of the court=s jurisdiction to hear this case.  Although the law firm was
neither a party nor a third-party beneficiary entitled to enforce the Rule 11
letter or the settlement agreement, this inability to enforce these contracts
did not deprive the trial court, and does not deprive this court, of
jurisdiction.  Under binding precedent, this matter goes to the merits of the
law firm=s claims rather than the jurisdiction
of the trial court and this court to hear these claims.  Because the issue is
not truly a jurisdictional one and because the insurance company did not raise
this issue in the trial court, this court cannot reverse on this basis. 
Nonetheless, the insurance company is correct in its assertion that the law
firm=s contract claims fail as a matter of
law based on the terms of the settlement agreement and release.  Accordingly,
we reverse the trial court=s judgment and render judgment that the law firm take nothing
on its claims.

                                 Factual and Procedural Background








Charles Robinson was injured in a car
accident while in the course and scope of his employment with Tri-Gas, Inc. 
Appellee Miller Criaco d/b/a Criaco & Corteguera (ACriaco@) provided legal representation to
Robinson under a contingency-fee agreement as to his claims regarding these
personal injuries.  After settling his claims against the driver of the other
car for her insurance-policy limits, Robinson, represented by Criaco, filed
suit against appellant Yasuda Fire & Marine Insurance Company of America
and its successor company Sompo Japan Insurance Co. of America (collectively, ASompo@), asserting claims based on the
underinsured-motorist coverage (AUIM Coverage@) provided by Sompo on vehicles driven
by Tri-Gas, Inc.=s employees in the course and scope of employment.  On
appeal, it is undisputed that Sompo was the insurer both for the UIM coverage
and for Tri-Gas=s workers= compensation policy.[1]  Sompo paid
at least $81,414.19 based on Robinson=s workers= compensation claim, and therefore,
Sompo had a workers= compensation lien in this amount on Robinson=s recovery from other sources, such
as the UIM coverage provided by Sompo.

Counsel for Robinson and counsel for
Sompo signed a Rule 11 letter in the lawsuit over UIM Coverage (hereinafter ARule 11 Letter@).  The body of this letter states in
its entirety:

The following
will serve as our Rule 11 Agreement regarding the resolution of the
above-referenced case.  Plaintiff will release any and all claims that exist
against Defendants, which also includes the Defendants that have not yet been
served or appeared in this matter.  Defendants will tender the sum of
$385,000.00 to this office and Defendants will repay and be responsible for
payment of the outstanding workers [sic] compensation lien.  All parties will
bear their own expenses.  If this is a correct understanding of our agreement,
please sign below and return this letter to our office, so that we may notify
the Court of our settlement and cancel the upcoming scheduling conference.








About a month later, Robinson signed
a ACompromise Settlement Agreement and
Release@ (hereinafter ASettlement Agreement@), which states that the parties to
the agreement are Robinson and Sompo.[2]  The
Settlement Agreement also states that it is a full settlement and discharge and
a fully binding release of all of Robinson=s claims against Sompo for UIM
Coverage.  In consideration of Sompo=s payment of $385,000 to Robinson,
Robinson completely released and forever discharged Sompo from any and all
claims, including workers= compensation claims, rights, damages, costs, and expenses of
any nature whatsoever that Robinson has in any way growing out of the
occurrence made the basis of Robinson=s suit.  Robinson agreed to dismiss
with prejudice his lawsuit against Sompo.  Robinson also represented that there
were no outstanding liens or that if there were any such liens, Robinson agreed
to indemnify Sompo against these liens.  However, the parties exempted from
this representation and indemnification provision the outstanding workers= compensation lien (hereinafter ALien@), which the parties agreed Awill be the responsibility of
[Sompo].@

Criaco subsequently filed this
lawsuit, alleging in pertinent part, as follows:

!         Criaco represented to Sompo that the Lien
would be addressed and satisfied by Criaco=s
efforts.

!         Under the Rule 11 Letter and the Settlement
Agreement, Robinson and Sompo expressly agreed that the Lien being advanced by
Cunningham Lindsey U.S., Inc. (the workers=
compensation subrogation adjuster) would be paid by Sompo.

!         Criaco contacted Cunningham Lindsey U.S.,
Inc. (hereinafter ACunningham@)
to verify the Lien total, and Criaco verified in writing that it would receive
a $27,000 attorney=s fee for recovering the Lien. 

!         After settlement and after Criaco tried to
secure payment of the Lien,  Sompo contacted Cunningham and told it that Sompo
would now handle the Lien.  Sompo fired Cunningham.

!         Sompo now asserts that any Lien has been
waived.

!         Sompo has breached it obligation under the
Rule 11 Letter and the Settlement Agreement to pay the Lien.

!         Criaco seeks enforcement of these contracts
and an order that Sompo tender to Cunningham[3]
the full amount of the Lien.

!         Criaco seeks its attorney=s fees for this contract case under Chapter 38 of the
Texas Civil Practice and Remedies Code.

 








Criaco filed a motion for summary
judgment in which it sought specific performance of the provisions of the Rule
11 Letter and Settlement Agreement.  Criaco asserted that these agreements are
unambiguous and require Sompo to pay the full amount of the Lien to
Cunningham.  According to Criaco, after the Settlement Agreement was signed and
the case dismissed, Sompo, rather than comply with this alleged contractual
obligation, decided to fire Cunningham (the subrogation adjuster) and claim
that the Lien was waived.  Criaco has asserted that, before Sompo fired
Cunningham, Criaco agreed to secure payment of the Lien for Cunningham and that
Criaco effectively obtained this payment when the Rule 11 Letter and the
Settlement Agreement were executed.  According to Criaco, there was an
agreement that Sompo would pay the $81,414.19 Lien and that Criaco would
receive one-third of this amount as its statutory attorney=s fee.  Criaco asserted that the
trial court, as a matter of law, should enforce the agreements and order Sompo
to pay $81,414.19 to Cunningham or, alternatively, the court should order Sompo
to pay one-third of this amount directly to Criaco.            Sompo filed a
cross-motion seeking a final summary judgment in its favor.  Sompo asserted
that the Settlement Agreement supersedes the Rule 11 Letter and precludes
Criaco=s claims.  Sompo also stated that,
although Criaco has never specifically referred to section 417.003 of the Texas
Labor Code, his claims are dependent on that statute.  See Tex. Lab. Code Ann. ' 417.003 (Vernon 2006).  However,
Sompo claims that Criaco cannot recover under this statute because Sompo=s interest was actively represented
by an attorney in the UIM Coverage lawsuit in that Sompo was a defendant
represented by counsel other than Criaco.  See id  ' 417.003(a) (AAn insurance carrier whose interest
is not actively represented by an attorney in a third‑party action shall
pay a fee to an attorney representing the claimant . . .@). 

The trial court denied Sompo=s motion and granted Criaco=s motion, ordering Sompo to tender
either $81,414.19 to Cunningham or $27,000 to Criaco, the latter amount being
the sum the trial court stated reflects Athe attorney=s fees generated by the recovery of
the workers= compensation lien.@  The trial court later made its judgment final and added an
award of attorney=s fees to Criaco for bringing this action.  On appeal, Sompo
asserts that (1) Chapter 417 of the Texas Labor Code does not support the award
of attorney=s fees to Criaco; and (2)  the law firm=s contract claims fail as a matter of
law based on the terms of the Settlement Agreement.  








Does the law firm=s inability to enforce the Rule 11
Letter and the Settlement Agreement deprive the trial court and this court of
jurisdiction?








In this suit, Criaco seeks to enforce
the Rule 11 Letter and the Settlement Agreement.  Under the unambiguous
language of these contracts, Criaco is not a party to these contracts or a
third-party beneficiary entitled to enforce these contracts.  Although Sompo
did not raise this issue in the trial court, our dissenting colleague concludes
that Criaco lacks standing and therefore this court and the trial court lack
jurisdiction.  This issue is not one that affects the court=s power to make a legal decision or
enter a judgment, and it is not jurisdictional.  Although lawyers and courts
occasionally state informally that an entity has no Astanding@ to enforce a contract if that entity
is not a party to the contract or a third-party beneficiary of it, such an
entity=s inability to sue goes to the merits
and does not deprive courts of jurisdiction.[4] 
See MCI Telecomm. Corp. v Texas Utils. Elec. Co., 995 S.W.2d 647,
650B54 (Tex. 1999) (concluding that
entity was neither party nor third-party beneficiary entitled to sue on
contract and reversing and rendering a take-nothing judgment on the merits
rather than a dismissal for lack of jurisdiction); State Farm Lloyds Ins.
Co. v. Maldonado, 963 S.W.2d 38, 40B42 (Tex. 1998); (same); Rivera v.
South Green Ltd. P=ship, 208 S.W.3d 12, 22B23 (Tex. App.CHouston [14th Dist.] 2006, pet.
filed) (affirming summary judgment dismissing contract claim on the merits
because plaintiff was neither party nor third-party beneficiary entitled to sue
on contract).  Therefore, this court cannot properly dismiss based on lack of
jurisdiction.  Further, because this issue is not jurisdictional and because
Sompo failed to raise it in the trial court, this court cannot reverse the
trial court=s judgment on this basis.

Does the Settlement Agreement
supersede the Rule 11 Letter and preclude the law firm=s contract claims?

Under the Rule 11 Letter, Sompo Awill repay and be responsible for
payment of the outstanding workers [sic] compensation lien.@  Criaco asserts that this language
requires Sompo to pay $81,414.19 to Cunningham and that receipt of this payment
would constitute a recovery of the Lien, from which Criaco allegedly would be
entitled to attorney=s fees under section 417.003 of the Texas Labor Code.  See
Tex. Lab. Code Ann. ' 417.003.  Criaco then asserts that
the Settlement Agreement has no express merger clause and that it is consistent
with and does not supersede the Rule 11 Letter.  

The Settlement Agreement does not
contain an explicit merger clause; however, under Texas law, even in the
absence of an express merger clause, all prior oral and written agreements are
presumed to merge into  a subsequent written contract.  See Hubacek v. Ennis
State Bank, 317 S.W.2d 30, 31 (Tex. 1958); Thompson v. Chrysler First
Business Credit Corp., 840 S.W.2d 25, 33 (Tex. App.CDallas 1992, no writ); Chambers v.
Huggins, 709 S.W.2d 219, 222 (Tex. App.CHouston [14th Dist.] 1986, no writ). 
Nothing in the record rebuts this presumption, and Criaco has not alleged that
the execution of the Settlement Agreement was the result of fraud, accident, or
mistake.  Therefore, the Rule 11 Letter merged into the Settlement Agreement,
and the Rule 11 Letter cannot add to, subtract, or vary the obligations stated
in the unambiguous language of the Settlement Agreement.  See Hubacek,
317 S.W.2d at 31; Thompson, 840 S.W.2d at 33; Chambers, 709
S.W.2d at 222. 








Under the Settlement Agreement, there
is no statement that Sompo will pay the Lien to Cunningham or that Sompo will
pay the Lien at all.  The Settlement Agreement states that  the Athe outstanding worker=s [sic] compensation lien, if any, .
. . will be the responsibility of [Sompo].@  Because Sompo was the holder of the
Lien, this language unambiguously states that Sompo is allowing payment of the
entire $385,000 settlement to Robinson without payment of the Lien out of these
funds.  The Settlement Agreement does not impose an obligation on Sompo to pay
or tender payment to any entity to satisfy the Lien.  Likewise, the Settlement
Agreement does not state that there will be a recovery of the Lien or that
Criaco is entitled to attorney=s fees based on the payment or recovery of the Lien.  Criaco
asserts that the Rule 11 Letter is consistent with the Settlement Agreement. 
However, presuming, without deciding, that the Rule 11 Letter requires Sompo to
pay $81,414.19 to Cunningham, as asserted by Criaco in its motion for summary
judgment, this obligation contradicts the unambiguous language of the
Settlement Agreement regarding the Lien.[5]








Sompo correctly asserted in the trial
court that the Settlement Agreement precludes the recovery sought by Criaco in
this case.  Therefore, the trial court erred in granting Criaco=s motion for summary judgment and
denying Sompo=s motion for summary judgment.[6]  Accordingly,
we sustain Sompo=s two issues on appeal, reverse the trial court=s judgment, and render judgment that
Criaco take nothing on its claims. 

 

 

 

/s/        Kem Thompson Frost

Justice

 

Judgment rendered and Majority and
Dissenting Opinions filed June 7, 2007.

Panel consists of Justices Anderson,
Edelman, and Frost.  (Edelman, J., dissenting).









[1]           In the trial court, Criaco=s position on this issue was not clear; however, on
appeal Criaco has not contradicted the statement of this fact in Sompo=s appellate brief.  See Tex. R. App. P. 38.1(f).  In addition, Criaco has
affirmatively stated this fact in its brief.





[2]           The agreement also states that defendants
Anthony Jewkes and Terry Flynn are parties; however, this is not material to
the issues in this appeal.





[3]           Cunningham was not a party to any of these
lawsuits.





[4]           Our dissenting colleague cites several
cases that do not involve any  issue as to whether an entity can enforce a
contract.  See Sierra Club v. Morton, 405 U.S. 727, 729B40 (1972) (holding Sierra Club lacked standing under
Administrative Procedure Act to seek declaratory judgment and injunction  based
on its claims that development plan violated federal laws and regulations); Austin
Nursing Center, Inc. v. Lovato, 171 S.W.3d 845, 849B50 (Tex. 2005) (holding that decedent=s estate had standing to pursue survival claim); Brown
v. Todd, 53 S.W.3d 297, 306 (Tex. 2001) (involving issue of standing to
challenge mayor=s executive order); Douglas v. Delp, 987 S.W.2d
879, 882 (Tex. 1999) (holding that plaintiff who had filed bankruptcy petition
had no standing to assert malpractice claims in state court);  Texas Ass=n of Business v. Texas Air Control Bd., 852 S.W.2d 440, 443B48 (Tex. 1993) (holding that party had standing to seek declaration
that statutes violated various provisions of Texas Constitution); Gleason v.
Taub, 180 S.W.3d 711, 712B15 (Tex. App.CFort Worth 2005, pet. denied) (holding property owners
had standing to assert claims for injury to real property and trespass).  In
addition, our dissenting colleague cites the West case, which supports
the majority opinion rather than the dissenting opinion in this case.  See
West v. Brenntag Southwest, Inc., 168 S.W.3d 327, 330B39 (Tex. App.CTexarkana
2005, pet. denied) (reversing and rendering a judgment of dismissal as to
negligence and nuisance claims as to which landowner lacked standing and
reversing and rendering a take-nothing judgment on the merits as to the
landowner=s contract claim because the landowner was not a party
to the contract upon which it sued).

 





[5]           Criaco also argued in the trial court that
Cunningham agreed that Criaco would secure payment of the Lien for Cunningham
and therefore be entitled to attorney=s
fees for obtaining this recovery. However, Criaco=s summary-judgment evidence does not prove such an agreement.  Criaco
relies on correspondence with Cunningham; however, the letters sent by
Cunningham to Criaco before the execution of the Settlement Agreement state
only (1) that Cunningham handles the workers=
compensation adjusting and that Terry Flynn handles the UIM adjusting, and (2)
the total amount of the Lien.  Criaco also relies on a letter sent by
Cunningham to Criaco about four months after execution of the Settlement
Agreement.  Criaco claims that Cunningham admitted that it was statutorily
obligated to pay $27,000 in attorney=s
fees in this letter.  Because of the timing of this letter, it cannot
constitute part of any alleged agreement regarding the settlement.  Further, to
the extent Criaco sought to use this letter as an admission by Sompo, Criaco
did not plead and conclusively prove that Cunningham=s statement was binding on Sompo under agency
principles.  Even if Sompo had stated that it was obligated to pay these fees
four months after the Settlement Agreement, that statement would not be a
judicial admission and would not prevent Sompo from changing its position based
on the unambiguous language of the Settlement Agreement.  





[6]           Criaco did not expressly address section
417.003 of the Texas Labor Code as a basis for recovery in its motion for
summary judgment, but even if it had, this statute would have afforded no
relief.  Sompo correctly asserts that Criaco cannot recover under this statute
because, among other things, Sompo was not A[a]n
insurance carrier whose interest [was] not actively represented by an attorney,@ given that Sompo was represented by counsel other
than Criaco in the UIM Coverage action.  See Tex. Lab. Code Ann. '
417.003.